AO 106 (Rev. 04/10) Application for a Search Warrant

**FILED**
U.S. District Court
District of Kansas

# UNITED STATES DISTRICT COURT
for the
District of Kansas

**AUG 27 2020**

Clerk, U.S. District Court
By _____ Deputy Clerk

In the Matter of the Search of:
*(Briefly describe the property to be searched or identify the person by name and address)*
A BLACK LG CELLULAR PHONE, IMEI # 355041-61-153983-9, TELEPHONE NUMBER 316-413-9402, CURRENTLY LOCATED AT THE WICHITA DEA OFFICE 8415 E 32ND ST, WICHITA KS

Case No. 20-m-6117-01-KGG

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
A BLACK LG CELLULAR PHONE, IMEI # 355041-61-153983-9, TELEPHONE NUMBER 316-413-9402, CURRENTLY LOCATED AT THE WICHITA DEA OFFICE 8415 E 32ND ST, WICHITA KS

located in the **DISTRICT OF KANSAS**, there is now concealed *(identify the person or describe the property to be seized)*:
See Attachment "A"

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
✓ evidence of a crime:
✓ contraband, fruits of crime, or other items illegally possessed;
✓ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| Title 21, U.S.C., Section 841(a) | Possession with the intent to distribute controlled substances |
| Title 21, U.S.C., Section 846 | Conspiracy to distribute controlled substances |

The application is based on these facts:
See Attached Affidavit
✓ Continued on the attached sheet.
☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

THOMAS M. KRAUSCH, TFO, DEA
*Printed name and title*

by phone.
Sworn to before me and signed in my presence.

Date: August 27, 2020

_____
*Judge's signature*

HONORABLE KENNETH G. GALE, U.S. Magistrate Judge
*Printed name and title*

City and state: Wichita, Kansas



IN THE UNITED STATES DISTRICT COURT
FOR KANSAS

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF A BLACK LG CELLULAR PHONE, IMEI # 355041-61-153983-9, TELEPHONE NUMBER **316-413-9402**, CURRENTLY LOCATED AT THE WICHITA DEA OFFICE 8415 E 32ND ST, WICHITA KS | Case No. 20-M-6117-01-KGG |

### AFFIDAVIT IN SUPPORT OF AN APPLICATION UNDER RULE 41 FOR A WARRANT TO SEARCH AND SEIZE

I, **Thomas Krausch**, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property—an electronic device—which is currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment A.

2. I am a Task Force Officer with the Drug Enforcement Administration, and have been since April 2014.

3. I am currently assigned to the DEA's Wichita, Kansas Resident Office. I am a Detective with the Wichita Police Department, and have been so employed for approximately twenty nine (29) years. I am currently assigned to the DEA Wichita Resident Office (WRO) as a Task Force Officer and have been assigned to the WRO since Aril of 2014. Prior to my current assignment with the DEA Task Force, I was a patrol officer with the Wichita Police Department from 1990 to 2000. In 2000 I was promoted to the rank of Detective and have worked in several

units to include the Special Investigations Bureau/Undercover Section, The Exploited and Missing Child Unit and Robbery/Homicide. Prior to my employment with the Wichita Police Department I had served seven (7) years in the United States Air Force as a Security Police Office.

4. As a Detective and Task Force Officer, during my tenure in law enforcement I have conducted numerous investigations into the transportation, possession, manufacture, and distribution of controlled substances; and the associated conspiracies. Many of these investigations have resulted in the arrest and conviction of several defendants on state and federal drug trafficking violations. I have debriefed confidential sources regarding drug activities and conducted physical, wire and electronic surveillance of persons involved in drug trafficking. Through my training and experience, I have become familiar with the manner in which illegal drugs are transported, stored, and distributed and the methods of payment for such drugs.

5. I have been the case agent on and participated in investigations involving the interception of wire communications and electronic communications of cellular telephones. I am familiar with the ways in which controlled substance traffickers and money launderers conduct their business, including, but not limited to, their methods of importing and distributing controlled substances, their use of cellular telephones, digital display devices, computers and email, and their use of numerical codes and code words to conduct their transactions.

6. In addition to the standard training provided by the Wichita Police Department and the DEA, I have attended various additional training courses specifically on narcotics interdiction, money laundering, advanced investigative techniques, and intelligence collection. These courses have been provided by various state/ local and federal entities.

7. I have personally participated in the investigation set forth below. I am familiar with the facts and circumstances of the investigation through my personal participation; from discussions with other agents of the DEA and other law enforcement officers; from my discussions with witnesses involved in the investigation; and from my review of records and reports relating to the investigation. Unless otherwise noted, wherever in this affidavit I assert that a statement was made, the information was provided by another agent, law enforcement officer, or witness who may have had either direct or hearsay knowledge of that statement and to whom I or others have spoken, or whose reports I have read and reviewed. Such statements are among many statements made by others and are stated in substance and in part unless otherwise indicated. Since this affidavit is being submitted for the limited purpose of securing an order authorizing the acquisition of the Requested Information, I have not included details of every aspect of the investigation. Facts not set forth herein, or in the attached exhibits, are not being relied on in reaching my conclusion that the requested order should be issued.

8. Jurisdiction rests with this Court to issue the proposed warrant because it is a "court of competent jurisdiction" as defined in 18 U.S.C. § 2711. Specifically, the Court is a magistrate judge of a district court of the United States that "has jurisdiction over the offense being investigated." *See* 18 U.S.C. § 2711(3)(A)(i).

9. This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

### IDENTIFICATION OF THE DEVICE TO BE EXAMINED

10. The property to be searched is a Black LG Cellular Phone, IMEI # [355041-61-153983-9], cellular telephone number **316-413-9402**, hereinafter the "**Device**." The **Device** is currently located at The Wichita DEA Office non-drug evidence locker, at 8415 E 32nd Street,

Wichita Kansas. I am requesting authorization for the forensic examination of the **Device** for the purpose of identifying electronically stored data particularly described in **Attachment A.**

## PROBABLE CAUSE

11.  On August 21, 2020, I and agents at the Drug Enforcement Administration, Wichita Regional Office (WRO) were made aware that Kathy DE LA TORRE was staying at the Hawthorn Suites Hotel, in room 5-2-1. I was also aware that DE LA TORRE had three outstanding arrest warrants issued by the Wichita Municipal Court for failures to appear. The underlying crimes were: Minor in consumption of alcohol, Possession of marijuana and Failure to pay a traffic fine.

12.  Agents with the WRO had been actively investigating DE LA TORRE for her involvement with a local Drug Trafficking Organization (DTO) as early as January 2020. Agents with assistance from two documented reliable Confidential Sources (CS) had verified specific information on DE LA TORRE's involvement with the DTO. DE LA TORRE had made at least two trips via Amtrak service to California for the purpose of transporting currency and drugs between Wichita and California under the direction of a known drug distributor in Wichita.

13.  In March of 2020, shortly after DE LA TORRE had returned from California, agents utilized a documented CS to purchase 43 "M-30" pills from DE LA TORRE. "M-30's" are a counterfeit form of oxycodone that contain fentanyl. The CS communicated with DE LA TORRE via cellphone, utilizing a cellphone application called "Snap Chat", a common application used between cell phone users to send and receive messages without giving out a specific phone number. The CS and DE LA TORRE would discuss drug amounts and prices as well as other criminal activity via the "Snap Chat" app that can be operated from a cell phone through a wireless connection as well as the devices data plan. The CS used "Snap Chat" as a primary way to

communicate with DE LA TORRE and had done so in the days leading up to the surveillance and arrest of DE LA TORRE on August 21, 2020.

14. On August 21, 2020, agents had established surveillance on room 5-2-1 at the Hawthorn Suites Hotel where DE LA TORRE was confirmed staying. Agents confirmed DE LA TORRE was registered in the room and that DE LA TORRE utilized her Kansas Driver's license as identification during her check in procedure.

15. Agents received information from the CS that DE LA TORRE had been selling pills from the room and was also believed to be in possession of a firearm. Further information learned by agents indicated that DE LA TORRE was in possession of several hundred fentanyl pills and counterfeit Xanax.

16. Agents received information from the hotel staff that DE LA TORRE was to be vacating the room and moving from room 5-2-1 another room on the property in building #1. At approximately 12:00 PM, agents observed DE LA TORRE exit room 5-2-1 carrying her personal belongings including a brown purse.

17. Once away from the room Agents arrested DE LA TORRE on her outstanding warrants. Based on the information provided to agents by the CS, DE LA TORRE was searched incident to arrest and for inventory purposes. DE LA TORRE had approximately 1,000 pills, consisting of several hundred of the "M-30s" as well as what agents believe to be counterfeit Xanax, commonly referred to as "bars", in her purse as well as a large sum of cash. DE LA TORRE told agents she had a Glock handgun that was still in room 5-2-1. DE LA TORRE signed a waiver for SA Williams to retrieve the handgun from room 5-2-1 since DE LA TORRE was in the process of moving from one room to the other. Agents also seized the "**Device**" that DE LA

TORRE had in her possession. Based on the information provided by the CS concerning DE LA TORRES communication concerning her criminal activities, the **Device** was secured for evidentiary purposes and for the ability for your Affiant to apply for a search warrant for the **Device** in hopes to discover additional information pertaining to DE LA TORRE's criminal enterprise.

18. On August 26, 2020 your Affiant served an administrative subpoena to T-Mobile/Metro PCS requesting subscriber and billing information for the **Device** being used by DE LA TORRE. On August 27, 2020 your Affiant received return information from T-Mobile/Metro PCS regarding the requested information. Your Affiant learned as a result of that information that the **Device** used by DE LA TORRE was subscribed in the name of Kathy Guadalupe DE LA TORRE, with a billing address of 7054 E Kellogg, Wichita, Kansas. The phone number for the **Device** was listed as **316-413-9402**.

19. Your Affiant has probable cause to believe that the electronically stored information described in **Attachment A** is recorded on the **Device** described in herein. Agents learned although the CS did not have the specific phone number for the **Device**, the CS communicated with DE LA TORRE on a regular basis via cellular phone by use of the Snap Chat App. The CS sent photos of the communications with DE LA TORRE from the CS phone screen. DE LA TORRE had shared photos while traveling to California from the AMTRAK train she was traveling on while going to pick up drugs in California. There are potentially communications pertaining to those trips to include photos of possible drug evidence, locations, and phone numbers of persons in contact with DE LA TORRE while committing various drug crimes. From your Affiants training and experience, persons involved in the distribution of narcotics typically maintain records or photographs of items they have for sale or have sold on their devices. Your

Affiant believes it to be true that the Device seized from DE LA TORRE at the time of her arrest is the Device used to communicate with the CS during the course of this investigation.

20. The **Device** is currently in the lawful possession of the DEA. It came into the DEA's possession in the following way: As documented in above paragraph 17 in this document, DE LA TORRE was taken into custody on three outstanding arrest warrants. Therefore, while the DEA might already have all necessary authority to examine the **Device**, I seek this additional warrant out of an abundance of caution to be certain that an examination of the **Device** will comply with the Fourth Amendment and other applicable laws.

21. The **Device** is currently in storage at the DEA Non drug evidence storage located at the DEA Office 8415 E 32nd Street, Wichita Kansas. In my training and experience, I know that the **Device** has been stored in a manner in which its contents are, to the extent material to this investigation, in substantially the same state as they were when the **Device** first came into the possession of the DEA.

## TECHNICAL TERMS

22. Based on my training and experience, I use the following technical terms to convey the following meanings:

   a. Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from

the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

b. Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

c. GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a

mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

    d. Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

23. Based on my training, experience, I know that the **Device** has capabilities that allow it to serve as a wireless telephone device, a digital camera, as well as connect to the internet. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

24. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

25. *Forensic evidence.* As further described in Attachment A, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Device

was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the Device because:

   a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

   b. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

   c. The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

    d.  Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

26.  *Nature of examination.*  Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the device consistent with the warrant.  The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

27.  *Manner of execution.*  Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises.  Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

28.  I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the **Device** described herein to seek the items described in **Attachment A**.

## REQUEST FOR SEALING

29.  It is respectfully requested that this Court issue an order sealing, until further order of the Court, all papers submitted in support of this application, including the application and search warrant.  I believe that sealing this document is necessary because the warrant is relevant to an ongoing investigation into the criminal organizations as not all of the targets of this investigation will be searched at this time.  Based upon my training and experience, I have learned

that, online criminals actively search for criminal affidavits and search warrants via the internet, and disseminate them to other online criminals as they deem appropriate, i.e., post them publicly online through the carding forums. Premature disclosure of the contents of this affidavit and related documents may have a significant and negative impact on the continuing investigation and may severely jeopardize its effectiveness.

Respectfully submitted,

THOMAS KRAUSCH
Task Force Officer
DEA

Subscribed and sworn to before me telephonically
on August 27, 2020:

HONORABLE KENNETH G. GALE
UNITED STATES MAGISTRATE JUDGE

## ATTACHMENT A

1.  All records on the **Device** described in the affidavit for application that relate to violations of Title 21 USA 841 (a)(1) and 841 (b)(1)(c), and Title 18, USA 924 (c)and involve Kathy DE LA TORRE since January 1, 2020 including:

    a. Any and all text message content to and from phone numbers associated to Kathy DE LA TORRE and any and all other associates listed in DE LA TORRE contacts.

    b. lists of customers and related identifying information;

    c. types, amounts, and prices of drugs trafficked as well as dates, places, and amounts of specific transactions;

    d. any information related to sources of drugs (including names, addresses, phone numbers, or any other identifying information);

2.  Evidence of user attribution showing who used or owned the Device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

    a. records of Internet Protocol addresses used;

    b. records of Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.